704 So.2d 380 (1997)
STATE of Louisiana
v.
Earlie J. MATTOX.
Nos. 96-KA-2370, 96-K-1406.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1997.
*381 Harry F. Connick, District Attorney, Raymond Egan, Assistant District Attorney, James J. Kelleher, Assistant District Attorney, Kevin Marks, Assistant District Attorney, New Orleans, for State.
Before ARMSTRONG, PLOTKIN and WALTZER, JJ.
ARMSTRONG, Judge.
The defendant, Earlie Mattoz, was charged by bill of information, filed on December 13, 1993, with one count of forcible rape and one count of aggravated crime against nature, violations of La. R.S. 14:42.1 and 14:89.1, respectively. Defendant pleaded not guilty. His motions to suppress the evidence and statement were denied on May 10, 1994. On May 28, 1996, the trial court denied the State's Prieur motion. On the same date, defendant filed a motion to quash; and, on June 4, 1996, the trial court granted the motion. The State filed a writ application from the denial of the Prieur motion (96-K-1406). The State filed an appeal from the granting of the motion to quash (96-KA-2370). This court consolidated the writ application with the appeal.

96-KA-2370
We first consider whether the trial court erred in granting defendant's motion to quash which was based on the State's failure to bring the case to trial within two years as *382 required by La.C.Cr.P. art. 578(2). The State argues that prescription on the two-year period set forth in C.Cr.P. art. 578(2) was interrupted several times and that the State had until July 1996 in which to try defendant.
The defendant filed motions to suppress the confession, evidence, and identification[1] on December 16, 1993. The hearing on these motions was set for March 4, 1994. On that date the hearing was continued on behalf of the defense and reset for May 10, 1994. On May 10, 1994, the trial court denied the motions to suppress and set trial for July 25, 1994. On July 25, 1994, the trial court granted a joint motion for continuance and reset trial for October 26, 1994. On October 26, 1994, the trial court granted another joint motion for continuance, and trial was reset for January 26, 1995. On January 26, 1995, the trial court granted the State's motion for a continuance and reset trial for May 10, 1995. There is no minute entry for May 10, 1995, but the docket master notes that there was no court that day because of the weather"MAY RAIN." Trial was reset for September 6, 1995. The minute entry for September 6, 1995, states that trial was continued due to another trial and was reset for November 8, 1995. On that date, the State's continuance was granted due to another trial and trial was reset for February 15, 1996. On February 15, 1996, trial was continued because of another trial and reset for April 18, 1996. On April 18, 1996, the minute entry states that the trial court granted the defense's motion for a continuance and the case was set for pretrial on May 7, 1996. On May 7, 1996, the pretrial was continued by joint motion to May 28, 1996.
On May 28, 1996, the trial court denied the State's Prieur motion and set hearing on the motion to quash for May 31, 1996, which hearing was continued that date until June 4, 1996. At the June 4, 1996 hearing, Clyde Merritt, defense counsel, testified that the April 18, 1996 continuance had been by joint motionnot by defense motion as reflected in the minute entry for that date. The continuance was due to the fact that Dwight Doskey, Merritt's co-counsel, was involved in a trial in federal court. Merritt testified at the hearing that:
I said [to defendant] listen [sic] for a year we have been here ready for trial. I am not going to trial, both of us [Merritt and Doskey] had planned to try this case together. He [defendant] tells me don't get a continuance [sic]. He came out [sic] Judge Shea had called both of us up. I am not sure whether Kevin [Marks, Assistant District Attorney] said they were moving for a continuance or I said, Judge, Dwight is not here [sic] we should try this case together, [sic] whatever it was the Judge continued the case and then asked how we charged this and Kevin said, joint [sic] and we are supposed to be looking that up [sic] that should all be on tape [sic].
The State did not present any testimony to contradict Merritt's testimony that the April 18, 1996 motion to continue was a joint motion.
A motion to quash is the proper procedural vehicle for challenging the untimely commencement of trial. State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284, 1286. When the defendant brings an apparently meritorious motion to quash based on prescription, the State bears a heavy burden to demonstrate either an interruption or suspension of the time limit such that prescription will not have tolled. Id.
La.C.Cr.P. art. 578(2) provides that no trial shall be commenced in non-capital felony cases after two years from the date of institution of prosecution. La.C.Cr.P. art. 579(A)(2) provides that the time limitation under La.C.Cr.P. art. 578 is interrupted if the defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the State. La.C.Cr.P. art. 579(B) provides that the C.Cr.P. art. 578 time limitation shall commence to run anew from the date that the cause of the interruption no longer exists. Under La.C.Cr.P. art. 580, the C.Cr.P. art. 578 time period is suspended until the trial court's ruling when the defendant files a *383 motion to quash or other preliminary plea; but in no case shall the State have less than one year after the ruling to commence trial. As stated in State v. Rome, supra, "The relevant period is simply not counted, and the running of the time limit resumes when the motions are ruled on." Id. at 1287.
The bill of information was filed on December 13, 1993. Thus, the State would have had until December 13, 1995 to commence trial under La.C.Cr.P. art. 578(2). However, the filing of the motions to suppress by defendant on December 16, 1993 suspended the running of the two-year prescription period. When the trial court denied those motions on May 10, 1994, the State had two years, minus the three days between the filing of the bill of information and the motions to suppress, within which to commence trial. Therefore, trial should have commenced by May 7, 1996, unless the State shows that the time limitation was interrupted or otherwise suspended.
The continuances of September 6, 1995, November 8, 1995, and February 15, 1996 were attributed to other trials. In State v. Joseph, 93-2734 (La.6/3/94), 637 So.2d 1032, the Supreme Court held, in a per curiam decision, that the trial court erred in denying a motion to quash where the defendant's trial had been "bumped" due to a heavy trial docket. The court stated that administrative problems within the court system generally do not constitute causes of interruption beyond the control of the State because the court system cannot excuse itself from affording the defendant a trial within the delay required by law. Therefore, the continuances due to other trials did not interrupt prescription in the instant case. The court in Joseph did not say whether such continuances acted to suspend the time limitations.
The State also points to the joint continuances on July 25, 1994 and October 26, 1994, and to the continuance of April 18, 1996, in support of its argument that the time limits were interrupted or suspended. In State v. Rome, supra, the Supreme Court ruled that a joint motion for continuance was insufficient to interrupt prescription. The court stated that it was well-settled that when the State consented to a preliminary plea, such as a joint motion for a continuance, the State could not thereafter point to that delay as a cause beyond its control under La.C.Cr.P. art. 579, which would interrupt prescription and excuse a failure to commence trial within the time limits. Therefore, the two 1994 joint motions to continue in the present case did not interrupt the two-year period in the present case. As to the continuance of April 18, 1996, it should also be treated as a joint motion to continue because the State presented no testimony to contradict Merritt's testimony that the motion was meant to be joint. Thus, it did not serve to interrupt the time limitations either. As to the issue of suspension, the court in Rome stated that it need not address the issue of whether the joint motion for continuance suspended the time limitation because any suspension of prescription would not have gained the State sufficient time to have made trial timely.
In State v. Montgomery, 95-1209, pp. 2-3 (La.App. 4th Cir.1995), 659 So.2d 534, 536-537, writ denied, 95-2173 (La.10/6/95), 661 So.2d 472, this court, quoting State v. Jones, 620 So.2d 341, 342-343 (La.App. 5th Cir. 1993), found a suspension of time limitations based on the filing of joint motions to continue. Therefore, the continuance of April 18, 1996 served to suspend the time limitation of La.C.Cr.P. art. 578(2). The motion to quash should have been denied because the State had at least one year from the ruling on the motion within which to commence trial. Accordingly, we reverse the judgment of the trial court which quashed defendant's indictment.

96-K-1406
In its writ application, the State complains that the trial court erred in denying its motion to introduce evidence of other crimes under La. C.E. art. 404(B)(1) and State v. Prieur, 277 So.2d 126 (La.1973). The State sought to introduce evidence of defendant's sexual molestation of the older sister of the victims[2] in the present case. The State argues *384 that defendant's modus operandi is the same in that he used his position of authority and closeness with the family of the girls to develop trust and then victimize them. The trial court denied the motion because the time element was different.
La. C.E. art. 404(B)(1) provides:
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
In State v. Code, 627 So.2d 1373, 1381 (La. 1993), cert. denied Code v. Louisiana, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994), the Supreme Court stated:
In general, evidence of other crimes is inadmissible in the guilt phase of a criminal trial for several reasons. Admission of evidence that the defendant may have committed other crimes creates the risk the defendant will be convicted simply because he is a "bad person." Juror confusion may occur where collateral issues are introduced. In addition, a defendant may not be prepared to face such attacks. State v. Bourque, 622 So.2d 198, 233 (La. 1993); State v. Prieur, 277 So.2d 126, 128-30 (La.1973).
Statutory and jurisprudential exceptions exist to this rule where the state offers evidence of other crimes for purposes other than to show the character of the defendant. State v. Jackson, 625 So.2d 146 (La.1993).
* * * * * *

State v. Prieur outlined the procedure to be used when the state intends to offer evidence of other criminal offenses. * * * Under Prieur, the state is required to give a defendant notice that evidence of other crimes will be offered and which exception to the general exclusionary rule the state is relying upon. Prieur, 277 So.2d at 130. In addition, the state must prove by clear and convincing evidence that the defendant committed the other crimes. Prieur, 277 So.2d at 129.
Case law has established an exception to the general inadmissibility of other crimes evidence to include evidence showing modus operandi. See State v. Henry, 436 So.2d 510 (La.1983); State v. Talbert, 416 So.2d 97 (La.1982); State v. Hatcher, 372 So.2d 1024 (La.1979). Several factors must be met for evidence to be considered as evidence of modus operandi:
(1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character; (4) the other crimes evidence must prove a material fact genuinely at issue; and (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect.

Hatcher, 372 So.2d [at] 1033 (citations omitted); see also State v. Henry, 436 So.2d at 513; Talbert, 416 So.2d at 99-100.
As noted in State v. Langley, 95-2029, pp. 4-5 (La.App. 4th Cir.1996), 680 So.2d 717, 720, writ denied, 96-2357 (La.2/7/97), 688 So.2d 498, the requirement for clear and convincing evidence of the other crime was changed when La. C.E. art. 1104 was enacted *385 in 1994. Article 1104 provides that the burden of proof is identical with that of Rule 404 of the Federal Rules of Evidence. Under that rule, the lesser standard of whether the evidence would support such a finding by the jury as found in Fed.R.Evid. 104(b) would apply.
At the Prieur hearing, the State did not present testimony from M.W.P. or any one else. At the beginning of the hearing, the trial judge stated that he handled these matters by argument. The prosecutor argued that defendant exercised the same relationship and same system of trust and control to victimize both the older sister and the victims in the present case. As stated by the prosecutor:
Judge, it's the state's contention that the defendant was a family friend of the victim's [sic] mother, that he used his position of authority and used his position of trust the victim's [sic] mother to facilitate a relationship where he could later victimize the children. It's come to the state's attention that there was a third child involved in this, [M.W.P]. That is the oldest daughter. In an interview with the family, it came to the state's attention that the defendant exercised the same relationship and the same system of trust and control to exercise and later victimize this particular victim as well, [M.W.P]. And that sexual conduct rose to a level of forcible rape.
The prosecutor stated that the time of the alleged offenses against M.W.P was perhaps from 1988 through 1991, whereas the offenses against the victims was from late November 1991 to mid-October 1993.
Defendant argued that other than the State's assertions, it was not known if there truly were any similarities as to where it occurred, how it occurred, and what led up to it. Defendant had asked that the alleged Prieur victim, M.W.P., testify at the beginning of the hearing. However, after hearing the facts previously set forth, the trial court was ready to rule without M.W.P.'s testimony and denied the State the right to use the offenses against her because the time element was sufficiently different from the instant case.
In State v. Jackson, 625 So.2d 146 (La. 1993), the defendant had been charged with molesting his minor granddaughters; and, the State filed a motion under Prieur to introduce the testimony of the defendant's daughters that he had molested them when they were children. The trial court heard the testimony of the daughters at the Prieur hearing and denied the State's motion. The Supreme Court reversed the trial court's ruling and held that the fact that the other acts or crimes happened some time before the offense for which the defendant is on trial was not sufficient, in and of itself, to require exclusion of the evidence. The court stated that a lapse in time will go to the weight of the evidence, not to its admissibility. The court further found that the testimony of the daughters met the then-required clear and convincing standard under Prieur and that its probative value did not outweigh its prejudicial effect.
The time lapse in the instant case between the alleged offenses involving M.W.P. and those of her younger sisters is much closer than that in Jackson, which involved a time lapse of from fifteen to twenty-four years. Here, the time lapse was apparently less than one year. The trial court should not have denied the Prieur motion on the sole basis that the offenses against M.W.P. had occurred at a different time from the offenses against her younger sisters.
However, there is not enough evidence in the present record to conclude that evidence of the alleged crimes against M.W.P. is admissible under Prieur. The trial court stated at the outset of the Prieur hearing that it handled these matters on argument; thus, unlike Jackson, there was no testimony from the victim of the other crimes alleged to have been committed by defendant. Moreover, as pointed out by defendant, without the testimony of the alleged victim it could not be known if the other offenses even occurred and whether the offenses were similar. Therefore, on remand the trial court is ordered to conduct a new Prieur hearing at which evidence, and not just argument, is presented as to the alleged offenses involving M.W.P.
*386 For the foregoing reasons, the judgment of the trial court granting the motion to quash is reversed. The judgment of the trial court denying the State's Prieur motion is also reversed. We remand this matter for further proceedings, including a new Prieur hearing consistent with the views expressed herein.
REVERSED AND REMANDED.
NOTES
[1] Defendant withdrew the motion to suppress the identification.
[2] At the Prieur hearing, the State referred to two victims, T.W. and P.W., even though the bill of information in the record refers only to the two offenses in which T.W. was the alleged victim. The older sister of both victims is N.W.P., as set forth in the State's writ application; however, the hearing transcript has her name as being M.W.P. Due to the nature of the offenses alleged to have been committed by defendant, we use the initials of the victims in this opinion.