LWALTZER, Judge.
Defendant appeals his conviction and sentence for possession of stolen property valued at more than $500.00. He argues that he was denied his right to a speedy trial.

STATEMENT OF THE CASE

On 17 September 1991, in case #352-037, the appellant was charged with one count of possession of stolen property valued at $500 or more. He pled not guilty to this charge, and on 12 March 1992, his trial ended in a mistrial. The State nolle prosequied this charge on 31 March 1993.
On 3 September 1992 in case # 352-232, the State filed an unrelated charge of possession of stolen property valued at $500 or more.[1] At his arraignment on 10 September 1992 he pled not guilty. On 31 March 1993, the State reinstated the original charge in case # 352-037 as a second count in this case, and the appellant pled not guilty to that charge as well. The case was transferred from Section “G” to Section “B” on 5 March 1996, to follow a newer, unrelated case. On 15 November 1996, the appellant filed a motion to quash the bill of information in this | ¡.case based upon a claim that the State had delayed too long to try him on these charges. This motion was denied on 20 December 1996. The appellant then filed a second motion to quash on 8 April 1997. This motion was denied just prior to trial, held on 28 May 1997. At the conclusion of the trial, a six-person jury found the appellant guilty as charged on count one and not guilty on count two. On 13 June 1997, the State filed a multiple bill, to which the appellant pled not guilty. The hearing on the bill was held on 27 June 1997, at the conclusion of which the court found the appellant to be a second offender. The appellant waived all delays, and the court sentenced him to serve fifteen years at hard labor.

FACTS

The defendant was tried on two counts of illegal possession of stolen property. He was convicted on one count, that involving property belonging to Henry Falcon. He was acquitted of the count involving property belonging to Carl Barnes.
Henry Falcon testified he owned a 1981 Cutlass which was stolen in Jefferson Parish in 1992. He testified the car had approximately 30,000 miles on it when it was stolen. He testified his wife discovered the car was being stolen when she walked outside of their residence and saw the car being driven away by unknown persons. He testified the car was recovered a few days after the theft. When he viewed the car at the police auto pound, he noticed the left front was damaged, the steering col *224 umn was broken, and the glove compartment was torn apart. He stated the car was in such bad condition when it was recovered that his insurance company “totaled” the car and gave him a check for $1801.00 to cover its loss. He insisted he did not give either Sumlar Davis or Damon Patterson permission to use the car.
13Police officers on routine patrol early on the morning of 12 August 1992 observed a car speeding toward them near the corner of Seine Street and General De Gaulle Avenue. The officers also saw the car disregard a traffic signal. The officers stopped the car, exited their own vehicle, and walked up to the suspect car. One officer noticed the vent window on the driver’s side was broken. As the officers neared, the car quickly drove away from them. The officers got back in their car and chased the fleeing car. The fleeing ear eventually crashed into a telephone pole. The occupants of the car tried to flee, but the passenger, later identified as Sumlar Davis, was immediately captured by one of the officers. The other officer chased the limping driver into an area of tall grass. The officer momentarily lost sight of the driver, and he called to his partner to request a canine unit. At that point the man, identified as the defendant Damon Patterson, walked out of the tall grass and surrendered. The officer handcuffed Patterson and walked him back to the police car. The officers discovered there was no paperwork in the car concerning its ownership, and the steering column had been defeated. The officers ran the car’s VIN and discovered the car had been stolen a few days earlier. The officers arrested Davis and Patterson. The officers also cited Patterson for various traffic citations. The officers recovered no keys to the car during searches incident to Davis’ and Patterson’s arrests.
The officer who apprehended Patterson testified that he got a good look at the driver’s face as he approached the car after the initial stop. He also testified that the broken vent window led him to suspect that the car was stolen. The other officer testified that he did not notice any damage to the outside of the stolen car when he and his partner first stopped it, prior to the car’s collision with the telephone pole. He also testified he and his partner were the only officers on the Rscene.
Damon Patterson denied being near the stolen car. He testified he was walking back from a friend’s residence in the area to his apartmeht in the area when a police car approached him and shone its light on him. He testified the officer, whom he identified as Officer Scott, the son of a lieutenant in the police force, put him up against the police car. He testified Scott radioed to other officers that he had a suspect with respect to a stolen car, and the two officers who testified at his trial soon arrived, one of them walking out of a wooded area. He insisted Scott beat him and tried to get him to admit he had been driving a stolen car. He testified the other two officers stopped Scott from abusing him. He insisted he cannot run because of a prior leg injury and that in 1992 he wore a leg brace. He admitted he had a prior convictions for simple arson and possession of stolen property. He insisted he did not see the stolen car in this case until the officers returned him to the scene where it was recovered. He also insisted he did not see Davis in the stolen car, but rather Davis was already in the police car when Patterson was taken to the scene.

DISCUSSION AND RECOMMENDATION

A. Errors Patent

A review of the record reveals there are no errors patent.

B. Assignment of Error

By his sole assignment of error, the appellant contends the trial court erred by denying his motions to quash the bill of information based upon the State’s failure to bring him to trial in a timely manner. Specifically, he argues that the State failed to try him on both cases within the two- *225 year time limitation of LSAC.Cr.P. art. 578, which provides in pertinent part: “Except as otherwise provided |¡jn this Chapter, no trial shall be commenced: ... (2) In [non-capital] felony cases after two years from the date of institution of the prosecution”. The appellant was charged with two counts of possession of stolen property valued at $500 or more, a felony. LSA-R.S. 14:69. LSA-C.Cr.P. art. 579 provides in part that the period of limitation set forth in LSA-C.Cr.P. art. 578 shall be interrupted if: “(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or ... (3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record.” LSA-C.Cr.P. art. 579 further provides that the “periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.” As noted in State v. Rome, 93-1221 p. 4 (La.1/14/94), 630 So.2d 1284, 1287: “An interruption of prescription occurs when the state is unable, through no fault of its own, to try a defendant within the period specified by statute.” When a defendant seeks to quash the charges against him due to a violation of the art. 578 time limitation, the State bears the burden of showing that an interruption as envisioned by art. 579 occurred. The State is held to a “heavy burden” of showing just and legal cause for the interruption. See Rome; State v. Taylor, 439 So.2d 410 (La.1983); State v. Mattox, 96-1406 and 96-2370 (La.App. 4 Cir. 12/10/97), 704 So.2d 380, writ denied 98-1701 (La.8/28/98), 723 So.2d 419, and 98-2395 (La.9/25/98), 725 So.2d 493. In addition, LSA-C.Cr.P. art. 580 provides:
When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no cause shall the state have less than one year after the ruling to commence the trial.
|fiThe appellant raises this assignment not only as to the count for which he was convicted but also for the count of which he was acquitted. The second count, of which he was acquitted, was initially filed in an earlier case, and his first trial in that case resulted in a mistrial. The State nolle prosequied the case and reinstated the charge as count two in the present case. However, the appellant was acquitted of this count, and it is difficult to see what relief he could receive at this point with respect to this count.
The following is the chronology of the count for which the appellant was convicted:
3 Sept. 92 The bill of information was filed.
4 Sept. 92 The case was allotted and transferred to follow another case involving the appellant. The appellant was noted as being' out on bond.
10 Sept. 92 Both defendants appeared and pled not guilty. Motions to suppress evidence, identification and confession, orally submitted, were set for 20 Oct. 92; and the appellant was notified in open court to appear on that date.
20 Oct. 92 Trial was set for 7 Dec. 92; the appellant was notified in open court to appear.
7 Dec. 92 The appellant appeared with new counsel. The State obtained a continuance. The codefendant filed a motion for speedy trial, and trial was reset to 10 Feb. 93. The appellant was notified in open court to appear.
10 Feb. 93 Trial was reset on motion of the codefendant to 14 April 93. The appellant did not appear; the court issued a capias for his arrest and set a bond forfeiture hearing for 9 Mar. 93.
*226 25 Feb. 93 The appellant appeared; the capias was recalled; the appellant was released on bond; trial was reset to 14 April 93.
31 Mar. 93 The State added the second count to the bill of information, to which the appellant pled not guilty. Triai was reset to 19 May 93, and the appellant was notified in open court to appear on that date.
|719 May 93 Although the codefendant appeared, the appellant did not appear. The court again issued a ca-pias and set a bond forfeiture hearing for 2 June 93. Trial was reset to 15 July 93 due to another trial in progress.
2 June 93 The appellant appeared; the capias was recalled; the bond forfeiture was canceled; the appellant was released; trial was reset to 15 July 93, and the appellant was notified in open court.
15 July 93 The court reset trial to 7 Oct. 93 due to another trial in progress.
7 Oct. 93 The State obtained a continuance due to a “possible plea” in the matter. A pretrial hearing was set for 27 Oct. 93.
27 Oct. 93 No court was held, but the parties appeared. Trial was reset for 10 Jan. 94.
10 Jan. 94 The trial was continued by the State and the defense to 23 Mar. 94.
23 Mar. 94 The State obtained a continuance because the victim was out of town. Trial was reset to 28 June 94.
30 June 94 There is only a notation that a sheet was filed by the State setting trial for 8 Aug. 94.
8 Aug. 94 The appellant was not served, and new counsel was appointed. Trial was reset to 26 Oct. 94.
26 Oct. 94 The appellant obtained a continuance because counsel had not yet met with him. Trial was reset to 26 Jan. 95.
26 Jan. 95 The court denied the State’s motion to sever defendants. The codefendant obtained a continuance due to no service- on a witness. Trial was reset to 20 April 95.
20 April 95 Trial was reset to 20 July 95; no reason was given in the minute entry for the continuance.
20 July 95 Because new counsel had just been appointed for the appellant, trial was reset to 17 Aug. 95. The codefendant filed a motion to quash the bill. The court noted it would rule on 17 Aug. 95.
17 Aug. 95 Both defendants appeared, but trial was continued because counsel was out of town. Trial was reset to 25 Oct. 95, and the appellant was notified in open court to appear.
26 Sept. 95 The state filed a set sheet and had issued a subpoena to 710 LeBoeuf Street, New Orleans to appear on 29 Sept. 95.
|s29 Sept. 95 The appellant failed to appear, and a status hearing was reset to 27 Oct. 95 with the notation to send notice to the appellant.
27 Oct. 95 The appellant failed to appear for the status hearing. The court issued a capias with the notation of no bond.
31 Oct. 95 The appellant appeared, and the court recalled the capias. The court reset trial to 29 Nov. 95 with the notation it would rule on the codefendant’s motion to quash on that date.
29 Nov. 95 Trial was reset to 14 Feb. 96 because the appellant had been re-arrested and was not in court. The court denied the codefendant’s motion to quash.
30 Nov. 95 The appellant appeared and noted he had not been in jail. The appellant was notified in open court that trial was reset to 14 Feb. 96.
*227 14 Feb. 96 The appellant failed to appear; the court issued a capias with no bond and forfeited the appellant’s bond. Trial was reset to 4 April 96.
27 Feb. 96 The appellant appeared; the court recalled the capias and set aside the bond forfeiture. The court notified the appellant in court to appear for trial 4 April 96.
29 Feb. 96 The court forfeited the defendant’s bond and issued a capias for his arrest (the appellant was in court on another case and left without informing the court).
5 Mar. 96 The case was transferred to another section to follow another case.
13 Mar. 96 The codefendant failed to appear; the court issued a capias and set a bond forfeiture hearing for 27 Mar. 96.
27 Mar. 96 The codefendant failed to appear, and the court forfeited his bond. Trial was reset without date until defendant, Davis, could be apprehended.
26 Sept. 96 Trial was set for the code-fendant for 21 Nov. 96, with the notation to place the codefendant on the jail list for that date.
28 Oct. 96 New counsel for the appellant appeared; motion hearings were reset to 15 Nov. 96. The appellant was in jail.
15 Nov. 96 The court reset the hearing on the appellant’s motions, including the motion to quash filed that date, to 20 Dec. 96.
|fl21 Nov. 96 The codefendant’s trial was reset to 28 Jan. 97 due to trial in progress. The codefendant also had new counsel.
20 Dec. 96 The appellant appeared in court., The court denied his motion to quash and reset trial to 31 Jan. 97.
28 Jan. 97 A status hearing was reset to 31 Jan. 97 for the codefendant.
31 Jan. 97 The court reset trial as to both defendants to 9 April 97
14 Feb. 97 The appellant appeared, and the court set a new bond.
24 Feb. 97 The codefendant filed another motion to quash.
8 April 97 The appellant filed another motion to quash.
9 April 97 Trial was reset to 28 May 97 due to another trial.
28 May 97 Trial was held. The jury found the appellant guilty as charged on the first count and not guilty on the second. The code-fendant was convicted of a lesser included offense on the first count.
The appellant’s trial was held almost five years after the bill of information was filed in this case. However, as the chronology above shows, many of the continuances were caused by the appellant’s failure to appear for trial. Four times between 1993 and 1996 the appellant failed to appear for trial after being notified in open court of the trial date and his obligation to appear. In each of these cases, where the minute entries indicated the appellant was notified in court to appear and the appellant subsequently did not appear, the time limitations of LSA-C.Cr.P. art. 578 were interrupted. As per LSA-C.Cr.P. art. 579(B), the time limitation of art. 578 began to run anew from the date the cause of the interruptions no longer existed, the dates the appellant reappeared (in most instances appellant appeared a few days after the scheduled trial date). The appellant’s last failure to appear after being ordered in court to do so occurred on 14 February 1996, and there is no indication in the record that the appellant reappeared until September, 1996. Thus, |inas per LSA-C.Cr.P. art. 579(B), the two-year time limitation of LSA-C.Cr.P. art. 578 started anew on that date. The appellant was tried and convicted on 28 May 1997, well within two years of the appellant’s reappearance in September 1996. In addition, during this final eight-month period, new *228 counsel for the appellant filed various motions, including a motion to quash which the trial court denied on 20 December 1996. As per LSA-C.Cr.P. art. 580, the State had no less than one year after the motion was denied to try the appellant. The State did try Patterson five months later. In addition, the appellant filed another motion to quash on 8 April 1997 which motion was denied just prior to the beginning of trial. Thus, the time limitations of LSA-C.Cr.P. art. 578 were not violated in this case.
A major portion of the appellant’s argument concerns the trial court’s nolle prose-qui of case # 352-037 and its reinstitution of this charge as count two in the instant case. However, as noted above, the appellant was acquitted of this count, and it is difficult to see what relief he could receive as to this count. The appellant also argues that the fact that the minute entries noted he did not appear is not sufficient to show that an interruption had occurred because the State failed to show that -he was served and failed to appear. The appellant forgets, however, that in each case he was ordered in open court to appear on the trial date, and in four separate instances he failed to do so. As such, the record itself shows actual notice of the date to appear. Thus, in each instance the time limitation of LSA-C.Cr.P. art. 578 was interrupted, and the time to bring defendant to trial began again when the appellant reappeared. The case cited by the appellant on this issue, State v. Foster, 96-0670 (La.6/28/96), 675 So.2d 1101, is not really relevant to this case. In Foster, the defendant failed to appear after a single attempt at domiciliary service. By contrast, here the appellant was ordered in open court to appear for Intrial on several occasions, and on four occasions he failed to do so.
In its response, the State notes that the record does not reflect that the appellant objected to the few continuances obtained by the State. It also notes that the appellant’s constitutional right to a speedy trial was not violated. However, the appellant does not raise any constitutional claims concerning the delays in getting his case to trial, and that issue is not before this court. He only alleges a violation of his statutory right to a speedy trial.
The record before the trial court and before this court amply shows the interruptions of the time limitation in this case. This assignment has no merit.
Accordingly, Patterson’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. Sumlar Davis was also charged in this count. Davis eventually waived his right to a jury trial, was tried by the court, and was found guilty of attempted possession of stolen property valued over $500. He waived all delays and was sentenced to serve one year at hard labor. He did not appeal his conviction or sentence.