746 So.2d 837 (1999)
STATE of Louisiana
v.
Darryl SARTAIN.
No. 98-KA-0378.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 1999.
Rehearing Denied December 3, 1999.
*841 Harry F. Connick, District Attorney of Orleans Parish, Joseph E. Lucore, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, Louisiana, Counsel for Defendant/Appellant.
Court composed of Chief Judge ROBERT J. KLEES, Judge MIRIAM G. WALTZER, Judge ROBERT A. KATZ.
KATZ, Judge.

STATEMENT OF THE CASE
The defendant, Darryl Sartain, was charged with eight counts of armed robbery in violation of La. R.S. 14:64 and one count of attempted armed robbery in violation of La. R.S. 14:(27)64.[1] Two preliminary and suppression hearings were held, in which the defendant's motion to suppress and his motion to suppress identification as to count one were denied. The defendant was tried by a jury on four counts of armed robbery (counts one, three, seven and ten) and one count of attempted armed robbery (count two) and found guilty as charged on all counts. The trial court sentenced the defendant to serve fifty years at hard labor without benefit of probation, parole or suspension of sentence on the armed robbery convictions (counts one, three, seven and ten) and twenty-four and one half years at hard labor without benefit of probation, parole or suspension of sentence on the attempted armed robbery conviction (count two), to run concurrently. The defendant's motion for an out of time appeal was granted, and this appeal followed.

STATEMENT OF THE FACTS
Sabrina Keelan testified that on October 29, 1994, she was working at the Exxon service station located on Chef Menteur Highway. At approximately 8:00 p.m., two men came into the store and robbed her. One of the men, a black man, wearing a camouflage jacket and a dark colored hard hat, pointed a large black handgun in her face and told her to give him the money in the cash register. The other man, a white man, acted as the "look out". After he took the money, the two men left. Ms. Keelan further testified that the two men ran across the highway. She then called the police. When the police arrived, she gave them a description of the perpetrators. In a photographic lineup and at trial, Ms. Keelan identified the defendant as the person who pointed the gun at her and robbed her.
Javid Osman was working at the Shell service station located at 5401 Crowder Boulevard on November 3, 1994. At 11:00 a.m., a black man walked up to the counter and asked Osman for five nickels for a quarter. When Mr. Osman opened the register, the subject pulled a gun and told Osman to give him all the money. At trial, *842 Osman testified that the gun appeared to be a black nine millimeter automatic. The subject left after Osman gave him the money. The subject got into the passenger side of a waiting vehicle. In a photographic lineup and at trial, Mr. Osman identified the defendant as the person who robbed him.
Ms. Elmira Jefferson is the owner-operator of the Chevron service station located at 3201 Chef Menteur Highway. On November 7, 1994, Ms. Jefferson and her daughter were working at the service station when the defendant entered the store. Ms. Jefferson was kneeling down by the safe with her back to the register when she heard someone say, "Give it up." She did not pay attention as she thought someone was joking. When she heard the person say, "Give it up, bitch," she looked up and saw the defendant holding a gun on her daughter. Ms. Jefferson told her daughter to give the money to the defendant. The defendant then pointed the gun at Ms. Jefferson; Ms. Jefferson gave the defendant the money she had been putting in the safe. Ms. Jefferson testified that the weapon used by the defendant was a long black gun. The defendant left the store after Ms. Jefferson gave him the money. She saw him jump a fence and get into a car. A customer in the store stated that the vehicle was blue. Ms. Jefferson immediately called the police. She gave a description of the perpetrator to the police officer. She described the perpetrator as a black male, approximately five feet six inches to five feet seven inches, thin build, wearing a cap with a Band-Aid underneath his left eye. Ms. Jefferson identified the defendant in a photographic lineup and at trial as the perpetrator.
Sabrina Bridges was working at a Texaco service station in New Orleans East on November 11, 1994. At approximately 7:25 a.m., the defendant walked into the store and asked Ms. Bridges were the bubble gum was located. Ms. Bridges directed the defendant to the aisle where bubble gum could be found. The defendant picked up some bubble gum and walked to the counter. He placed the gum and some change on the counter. The defendant then pulled a gun out and told Ms. Bridges to give her the money. Ms. Bridges opened the register and gave him the money. The defendant then left the store. Ms. Bridges observed the defendant walk to a nearby hotel and get into a green vehicle. Ms. Bridges locked the store's doors and called the police. When the police arrived, she gave the officers a description of the perpetrator. Ms. Bridges told the officers that the perpetrator was of a medium height and slender. He was wearing black jeans, a striped shirt and a green hat. The perpetrator had an unlit cigarette in his mouth. A few hours later, a police officer returned to the service station and asked Ms. Bridges to accompany him to a house near Michoud. As they passed in front of a house on North Nemours Street, Ms. Bridges saw the defendant and identified the defendant as the person who robbed her. At trial, Ms. Bridges identified the defendant as the perpetrator of the armed robbery.
Timothy Barnes testified that he and the defendant were involved in several armed robberies in October and November of 1994. He admitted that he had pled guilty to the armed robberies and was sentenced to serve nine years at hard labor on each count, the sentences to run concurrently. Barnes stated that he met the defendant in October of 1994 when he moved to New Orleans from Kentucky. Barnes testified that he and the defendant, who was armed with a gun, robbed an Exxon service station on October 29, 1994 and used a green vehicle for their transportation. Barnes further testified that he was also involved in an armed robbery, which occurred on November 11, 1994, at a location on North Galvez. Barnes stated that he used a bluish-black BB gun, which looked like an automatic handgun, in the robbery. Barnes was arrested on November 11, 1994, at a crack house near Michoud.
*843 New Orleans Police Officer Farrell St. Martin assisted in the robbery investigations and the defendant's arrest. On the morning of November 11, 1994, Officer St. Martin investigated an armed robbery, which occurred that morning at a Shell service station located at 5501 Crowder Boulevard. The officer went to the service station and spoke with the manager and a customer who witnessed the robbery. After receiving information about the armed robbery, Officer St. Martin returned to his office to complete his report. While at his office, he received a phone call from Officer Gunther. As a result of this phone call, Officer St. Martin proceeded to the Chevron service station located at the intersection of Chef Menteur and Michoud. The Chevron station had been robbed the night of November 10, 1994. He spoke with a Chevron employee and received a video tape of the robbery. At that time, Officer St. Martin called his supervisor to see if the videotape could be shown to the attendant at the Shell service station that had been robbed that morning. During the conversation with his supervisor, Officer St. Martin observed a green Mazda 626 turning off of Chef Menteur onto Michoud in a lake bound direction. The officer asked the station attendant to tell his supervisor that he was in pursuit of the vehicle described in the armed robbery of the Shell station that morning. Officer St. Martin followed the vehicle. He notified the dispatcher that he was in pursuit and gave a description of the vehicle. The vehicle turned on Lamaze Street towards North Nemours Street. Officer St. Martin and another officer were able to stop the vehicle. The defendant was driving the vehicle. An unknown black female was in the front passenger seat. Officer St. Martin advised the defendant that he and the vehicle were under investigation for armed robbery. He then asked the defendant the whereabouts of the white man who had been driving the vehicle. The defendant took the officer to 13535 North Nemours Street. The officer entered the residence and located the white man, later identified as Timothy Barnes. Officer St. Martin recovered a pellet gun in the vehicle. The gun resembled a semi-automatic nine millimeter. The gun was located on the driver's side floorboard. After the officer retrieved the gun, he returned to the house and obtained a consent to search the residence from the woman who resided there. Clothing and a helmet were recovered from the residence.
Officer Daniel Wharton was also involved in the defendant's arrest on November 11, 1994 and assisted in the pursuit of the defendant's vehicle. He was on the scene when Officer St. Martin stopped the vehicle. Officers St. Martin and Wharton informed the defendant that the vehicle had been used in an armed robbery but a white male was seen driving the vehicle. The officers asked the defendant the white man's name. In response, the defendant pointed to a house on North Nemours. The officer located Timothy Barnes in the house. The officers recognized Barnes from the surveillance tape taken from the Chevron service station.
Officer David Patrolia, and his partner, Officer Gerald Kuhn, also assisted in the defendant's arrest. The defendant had been identified as the perpetrator of the armed robbery of the Exxon service station in New Orleans East. The defendant matched the description of the perpetrator as seen on surveillance videotape of the robbery. Officer Patrolia conducted a photographic lineup with Sabrina Keelan, the attendant at the Exxon service station when it was robbed.
Officer Justin Crespo conducted the follow-up investigation of an attempted armed robbery of the Times Saver on Haynes Boulevard on November 1, 1994. Officer Crespo conducted a photographic lineup with the victim, Mr. Tyrone Johnson. Mr. Johnson identified the defendant as the person who attempted to rob him on November 1, 1994. Officer Crespo also performed the follow-up investigations of armed robberies, which occurred at the *844 Shell service station on Crowder Boulevard on November 30, 1994 and the Chevron service station on Chef Menteur Highway on November 7, 1994. Officer Crespo conducted photographic lineups with Mr. Javid Oslam, the attendant at the Shell station, and Mrs. Elmira Jefferson, the owner-operator of the Chevron service station. Mr. Oslam and Mrs. Jefferson identified the defendant as the person who robbed them.
William B. Williams, an investigator with the Orleans Parish District Attorney's Office, testified that he viewed the surveillance tapes at the Seventh District Police Station. The Seventh District was the only office that had the equipment to view the tapes. Special equipment was needed to view the time lapsed video tapes. Still photographs were made from the videotapes when the Seventh District refused to release the equipment to the District Attorney's office.

DISCUSSION

Errors Patent
A review of the record for errors patent reveals that the trial court sentenced defendant immediately after denying the defendant's pro se post trial motion for in arrest of judgment. The sentencing transcript indicates that the defendant did not waive his right to a twenty-four delay prior to sentencing.[2] LSA-C.Cr.P. art. 873. In State v. Augustine, 555 So.2d 1331 (La.1990), the Louisiana Supreme Court held that failure to waive the twenty-four hour delay voided the defendant's sentence if the defendant attacks his sentence, even though the defendant fails to specifically allege this failure as an error on appeal. However, the Fourth Circuit, in State v. Collins, 584 So.2d 356 (La.App. 4 Cir. 1991), held that the failure to observe the delay would be deemed harmless error where the defendant did not challenge his sentence on appeal. Therefore, in the present case where no error is raised as to the defendant's sentence, the failure of the trial court to observe the delay period would be considered harmless error.
No other patent errors were found.

Counsel's Assignment of Error No.1
The defendant argues that the evidence as to count two, the attempted robbery charge, is insufficient to sustain the defendant's conviction.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991).
When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982).
To prove an attempted armed robbery, the state must prove that the defendant had a specific intent to commit the crime of armed robbery[3], and did an act for the purpose of and tending directly *845 towards the commission of the crime of armed robbery. LSA-R.S. 14:27.
In count two, the defendant was charged with the attempted armed robbery of Tyrone Johnson, an employee of the Time Saver located on Haynes Boulevard. Mr. Johnson was forbidden to testify at trial as to the circumstances of the alleged attempted armed robbery because Mr. Johnson violated the sequestration rule. Without Mr. Johnson's testimony, there was no evidence to prove that the defendant entered into the store with a weapon with the intent to rob the place.
Officer Justin Crespo testified that he handled the follow-up investigation of the attempted armed robbery and conducted a photographic lineup with Mr. Johnson, who identified the defendant as the perpetrator. This testimony was insufficient to sustain the defendant's conviction for attempted armed robbery. Officer Crespo did not testify to such specific evidence.
The trial transcript reflects that the State introduced photographs taken from a surveillance tape obtained from the Time Saver. Officer Crespo identified the photographs, as photographs of the robbery that occurred at the Time Saver. However, these photographs were not included in the appellate record, for these photographs may have provided evidence of the missing elements of the crime, i.e., that the defendant was armed with a weapon and attempted to rob the store. Without the photographs, this Court cannot affirm the defendant's conviction for attempted armed robbery. We find that the State has failed to meet its burden of producing sufficient evidence to support the charge of attempted armed robbery.
The defendant's conviction and sentence for attempted armed robbery must be reversed.

Counsel's Assignment of Error No.2
The defendant also argues that the trial court erred when it failed to grant a mistrial or admonish the jury after a police officer allegedly referred to evidence of another crime committed by the defendant, which violates LSA-C.E. article 404.
The testimony in question was elicited from Officer St. Martin by defense counsel during cross-examination. Officer St. Martin testified on direct examination that the defendant directed him to the residence on North Nemours when the defendant was questioned about the driver of the vehicle seen earlier that day. On cross examination, the defense counsel attempted to elicit from Officer St. Martin that although Timothy Barnes was found inside the residence, the defendant did not live at the residence. As a result of the defense counsel's questions, Officer St. Martin testified that the defendant and Barnes were living in the crack house and using drugs. Defense counsel thereafter requested a mistrial, which the trial court denied.
When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant, as to which evidence is not admissible, the defendant's remedy is a request for an admonition or a mistrial pursuant to LSA-C.Cr.P. art. 771. The remark or comment must constitute an unambiguous reference to other crimes. State v. Lewis, 95-0769, p. 7 (La.App. 4 Cir. 1/10/97), 687 So.2d 1056, 1060, writ denied, 97-0328 (La.6/30/97), 696 So.2d 1004. On request, the trial court shall admonish the jury to disregard such remark or comment. La.C.Cr.P. art. 771. Upon motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant of a fair trial. Id. The granting of a mistrial under La.C.Cr.P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Smith, 418 So.2d 515, 522 (La.1982); State v. Allen, 94-1895, p. 9 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078, 1085, writs denied, 95-2557, 95-2475, (La.2/2/96), 666 So.2d 1087. Mistrial *846 is a drastic remedy that is only authorized where substantial prejudice will otherwise result to the defendant. Id. The determination of whether prejudice has resulted lies within the sound discretion of the trial court. State v. Banks, 96-2227, p. 2 (La.4/18/97), 692 So.2d 1051, 1053. A trial court's ruling on whether or not to grant a mistrial because of comment by a police officer referring to other crimes evidence should not be disturbed absent a clear abuse of discretion. State v. Nicholson, 96-2110, p. 13 (La.App. 4 Cir. 11/26/97), 703 So.2d 173, 180, writ denied, 98-0014 (La.5/1/98), ___ So.2d ___, 1998 WL 234690; State v. Manuel, 94-0087, 94-0088, p. 4 (La.App. 4 Cir. 11/30/94), 646 So.2d 489, 491. "Errors are harmless unless the reviewing court is thoroughly convinced that the remarks inflamed the jury and contributed to the verdict." State v. Nicholson, supra, citing State v. Byrne, 483 So.2d 564 (La.1986), cert. denied, Byrne v. Louisiana, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986).
In the case at bar, the officer's statement that the defendant was going in the house and "using drugs" was an unambiguous reference to a specific crime and an admonition, if not a mistrial, should have been given. However, there is no indication that this indirect comment made it impossible for defendant to have obtained a fair trial. Therefore, it cannot be said that the trial court clearly abused its discretion in denying defendant's motion for a mistrial. Moreover, even assuming the trial court erred in denying the motion for mistrial, considering the overwhelming evidence in this straightforward case, such error was harmless.
This assignment is without merit.

Counsel's Assignment of Error No.3
The defendant contends that the trial court erred when it appointed Mr. Pinkston to represent the defendant without first determining whether the defendant knowingly and intelligently waived a potential conflict of interest.
If a conflict exists, the defendant may waive the conflict as long as the waiver is knowingly and intelligently made. To be knowing and intelligent, the defendant must be told (1) that a conflict of interest exists; (2) the consequences to his defense from continuing with conflict-laden counsel; and (3) that he has a right to obtain other counsel. State v. Castaneda, 94-1118, La.App. 1 Cir. 6/23/95, 658 So.2d 297.
In the case sub judice, the defendant's family initially retained Mr. Pinkston to represent the defendant in this matter. On July 6, 1995, when Mr. Pinkston realized at the last motion hearing that he had represented one of the victim's husband in a prior matter, he sought to withdraw from the case, and the trial court granted that motion. At this time, the defendant was made aware of the possible conflict of interest. According to the transcript, the defendant acknowledged that his mother was in the process of obtaining a new attorney. After appointing several different attorneys to represent the defendant, the trial court ultimately appointed the Orleans Indigent Defendant Program to represent the defendant. At the trial, on March 27, 1997, Mr. Pinkston and two attorneys from OIDP represented the defendant. The record is silent as to whether the trial court appointed Mr. Pinkston or the defendant retained Mr. Pinkston's services.
Wherever a potential conflict is raised before or during trial, the trial court has a duty to either appoint separate counsel or take adequate steps to determine whether the risk of a conflict of interest was too remote to warrant separate counsel. Holloway v. Arkansas, 435 U.S. 475, 484, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978). A defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. State v. Wille, 595 So.2d 1149 (La.1992), cert. denied, Wille v. Louisiana, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992). An actual conflict of interest is established *847 when the defendant proves that his attorney was placed in a situation inherently conducive to divided loyalties. State v. Tart, 93-0772 (La.2/09/96), 672 So.2d 116, cert. denied, Tart v. Louisiana, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996).
Since the defendant did not object to Mr. Pinkston's representation at the time of trial, the defendant bears the burden of proving an actual conflict of interest adversely affected Mr. Pinkston's performance. The defendant was not only represented by Mr. Pinkston but two other competent attorneys. There is nothing to indicate that Mr. Pinkston's prior involvement with Mr. Jefferson adversely affected Mr. Pinkston's performance and loyalty to the defendant. A review of the trial transcript reveals that Mr. Pinkston vigorously participated in the defendant's defense.
This assignment is without merit.

Counsel's Assignment of Error No.4 and Pro Se Assignment of Error No.1
The defendant argues that the trial court erred in failing to conduct a hearing on the defendant's motion to quash the bill of information and in denying the defendant's motion to quash, motion for a speedy trial and motion in arrest of judgment on the ground that the State failed to prosecute his case within the time limits provided in LSA-C.Cr.P. art. 578.[4] LSA-C.Cr.P. art. 579 provides in part that the period of limitation set forth in LSA-C.Cr.P. art. 578 shall be interrupted if: "... the defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record." This article further provides that the "periods of limitation established by article 578 shall commence to run anew from the date the cause of interruption no longer exists."
As noted in State v. Rome, 93-1221 p. 4 (La.1/14/94), 630 So.2d 1284, 1287: "An interruption of prescription occurs when the state is unable, through no fault of its own, to try a defendant within the period specified by statute." When a defendant seeks to quash the charges against him due to a violation of the article 578 time limitation, the State bears the burden of showing that an interruption as envisioned by article 579 occurred. The State is held to a "heavy burden" of showing just and legal cause for the interruption. See State v. Taylor, 439 So.2d 410 (La.1983); State v. Patterson, 97-2861, (La.App. 4 Cir. 5/12/99), 737 So.2d 222; State v. Mattox, 96-1406 and 96-2370 (La.App. 4 Cir. 12/10/97), 704 So.2d 380, writ denied 98-1701 (La.8/28/98), 723 So.2d 419, and 98-2395 (La.9/25/98), 725 So.2d 493.
In addition, LSA-C.Cr.P. art. 580 provides:
When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by article 578 shall be suspended until the ruling of the court thereon; but in no cause shall the state have less than one year after the ruling to commence the trial.
The State's heavy burden was proven after a careful review of the following chronology:
On December 29, 1994, the bill of information was filed. On January 5, 1995, the defendant was arraigned. On January 19, 1995, the case was continued due to another trial in progress. On March 29, 1995, a joint motion for continuance was granted. The defendant filed motions to suppress the identifications, and the hearing was held on May 5, 1995. On July 6, 1995, the trial court granted Mr. Pinkston's motion to withdraw. On July 31, 1995, a hearing to determine counsel was held. Thereafter, *848 from July, 1995 to October 1, 1996, the trial court appointed several attorneys to represent the defendant. In August of 1995, the trial court and the defense obtained continuances. On November 18, 1996, the defendant was granted a continuance. On January 24, 1997, a joint continuance was granted. On March 4, 1997, a motion hearing was held. On March 11, 1997, the defendant was granted another continuance. On March 27, 1997, the defendant went to trial on five of the counts asserted in the bill of information.
The defendant's motions to continue were preliminary pleas that suspended the two-year limitation period and the state had one year from the granting of the defendant's last motion for continuance to commence trial. State v. Mattox, supra. As the defendant's last motion for continuance was granted on March 11, 1997, the State timely commenced trial on March 27, 1997.
This assignment is without merit.

Counsel's Assignment of Error No.5 and Pro Se Assignment of Error No.3
In this assignment, the defendant argues that the trial court erred when it failed to allow the jury to view the surveillance tapes, which violates LSA-C.E. art. 1002. The State elicited testimony from three officers, who testified that they viewed the videotape and concluded that the defendant was the perpetrator committing the crimes.
The admissibility of a videotape is well settled as being largely within the discretion of the trial judge. Lafleur v. John Deere Co., 491 So.2d 624 (La.1986); United States Fidelity & Guaranty Co. v. Hi-Tower Concrete Pumping Service, 574 So.2d 424 (La.App. 2d Cir.), writs denied, 578 So.2d 136 (La.1991). The trial court must consider whether the videotape accurately depicts what it purports to represent, whether it tends to establish a fact of the proponent's case and whether it will aid the jury's understanding. Against those factors, the trial court must consider whether the videotape will unfairly prejudice or mislead the jury, confuse the issues or cause undue delay. The trial court may exclude the evidence if the factors favoring admission are substantially outweighed by the factors against admission. LSA-C.E. arts. 401-403; U.S. Fidelity v. Hi-Tower, supra.
Here, we must specifically decide the admissibility and relevancy of the still pictures and the testimony concerning the contents of the unavailable document, i.e. the surveillance videotape. While LSA-C.E. art. 1002 requires the original document to prove the contents therein, under LSA-C.E. art. 1004(1), the original of a writing, recording or photograph is not always required to prove its contents, and other evidence of the contents of a writing, recording or photograph is admissible if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.
According to State v. Johnson, 30,078 (La.App. 2 Cir 12/10/97), 704 So.2d 1269, the "best-evidence" rule is to be applied sensibly and with reason. Absent a showing of prejudice to the defendant, a conviction will not be reversed on the ground that the best evidence was not produced. The "best evidence" rule does not mandate production of an original taped statement when testimony shows that the original is not available and there is no bad faith by the State.
In the present case, Officer Patrolia, Officer Crespo and Officer Williams, all testified that they viewed the videotape, which showed the defendant committing the various crimes of armed robbery. Officer Williams further testified that the equipment needed to view videotapes was not available despite his many attempts to procure it. According to the transcript, the trial judge confirmed the fact that both parties knew, before the trial, that such equipment was not available and the still photographs taken from the surveillance tapes would be introduced in lieu of the *849 videotapes. The record does not show or suggest bad faith or prejudice on the State's part.
Accordingly, this assignment is without merit.

Pro Se Assignment of Error No.2
The defendant also suggests that the trial court erred when it failed to grant the defendant's motion to suppress. The defendant argues that the police did not have reasonable cause to stop his vehicle.
Reasonable cause for an investigatory stop is something less than probable cause for arrest and must be determined under the facts of each case. The issue is whether the officers had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from government interference. The right to make an investigatory stop must be based upon reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Ossey, 446 So.2d 280 (La.1984), cert. den. Ossey v. Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Andrishok, 434 So.2d 389 (La. 1983). The detaining officer must have knowledge of specific, articulable facts, which reasonably warrant the stop. State v. Lee, 462 So.2d 249 (La.App. 4th Cir. 1984). The totality of the circumstances must be considered in determining whether reasonable cause exists. State v. Belton, supra, U.S. v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
LSA-C.Cr.P. art. 215.1 allows a police officer to stop a person in a public place whom "he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." While flight, nervousness or startled behavior at the sight of a police officer is not in and of itself enough to constitute reasonable cause to make an investigatory stop, these facts may be highly suspicious and lead to a finding of reasonable case to detain the individual. State v. Belton, supra.
Evidence introduced at the suppression hearing and trial reveals that the police officers had reasonable cause to stop the defendant's vehicle. The officers had been given information earlier that day that the vehicle, which the defendant had been driving, was involved in an armed robbery. The vehicle had been described by make, model and color, as well as license plate number. When the officers saw the vehicle, they reasonably believed that it had been used in an armed robbery and had reasonable cause to stop the vehicle.
This assignment is without merit.

Pro Se Assignment of Error No.4
The defendant argues that he received ineffective assistance of counsel at trial when Mr. Pinkston represented him when he had previously represented one of the victim's husband. The defendant further argues that his counselor was ineffective when he failed to conduct a pretrial investigation of the defendant's alibi witnesses and when he failed to obtain the necessary equipment to view the surveillance tapes.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir. 1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La. 1983); State v. Ratcliff, 416 So.2d 528 (La. 1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4th Cir.1986).
*850 The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show (1) that his counsel's performance was deficient and (2) that the deficiency prejudiced the defendant.
The defendant's first argument concerns Mr. Pinkston's representation of him in light of the fact that Mr. Pinkston previously represented one the victim's husband. As stated above, the defendant has not produced any evidence to support the existence of an actual conflict of interest. In addition, a review of the trial transcript reveals that Mr. Pinkston vigorously represented the defendant. He participated in the cross-examination of the state's witnesses and questioned the reliability of the witnesses' identifications. The defendant has not produced any evidence suggesting that Mr. Pinkston was ineffective in his representation of the defendant.
The defendant's other two arguments concern pretrial investigation and preparation. The defendant contends that his trial counsel was ineffective for failing to interview alibi witnesses and to obtain the equipment necessary to view the surveillance tapes. The defendant does not identify his alibi witnesses or provide a summary of their testimony. As far the defendant's allegations concerning pretrial issues, these issues cannot be reviewed on appeal. Defendant should seek review of these issues through post conviction relief where an evidentiary hearing can be held.
This assignment is without merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence for attempted armed robbery are hereby reversed, and the defendant's convictions and sentences on the four counts of armed robbery are hereby affirmed.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] Sartain's co-defendant, Timothy Barnes, was charged with five counts of armed robbery in the same bill of information. On December 30, 1994, Barnes pled guilty as charged to all five counts. On March 3, 1995, the trial court sentenced Barnes to serve nine years at hard labor without benefit of probation, parole or suspension of sentence on each count, with the sentences to run concurrently.
[2] The docket master and minute entry of the sentencing hearing on April 10, 1997, provide that the defendant waived all delays. However, the sentencing transcript reveals that the defendant did not waive delays after the trial court denied his pro se motion in arrest of judgment. When there is a conflict between the minute entry and sentencing transcript, the sentencing transcript rules. State v. Jones, 557 So.2d 352 (La.App. 4 Cir.1990).
[3] Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." LSA-R.S. 14:64.
[4] LSA-C.Cr.P. art. 579 "Except as otherwise provided [97-2861 La.App. 4 Cir. 5] in this Chapter, no trial shall be commenced: ... (2) in [non-capital] felony cases after two years from the date of institution of the prosecution". In this case, the defendant was charged with eight counts of armed robbery and one count of attempted armed robbery, which are felony charges.